And our final case for today is Trader Joe's Company v. Trader Joe's United, case numbers 24-720 and 24-2826. Good morning, your honors. May it please the court, Melissa Arbacheri for Trader Joe's. I'd like to reserve three minutes of my time for rebuttal. The district court erred in dismissing Trader Joe's first complaint without any chance for leave to amend based on the fact-intensive question of likelihood of confusion. The court erred in dismissing the separate trademark dilution claim based on a nominative fair use defense that Trader Joe's United did not raise and that is not applicable here. And the court erred in prematurely and incorrectly applying the Norris LaGuardia Act. Unlikelihood of confusion, I want to make four key points. First, the court erred in looking and requiring identicality when the law looks to relatedness for the goods and looks to similarity for the marks. Second, on similarity, the court erred by ignoring the word mark entirely, by elevating differences over similarities, and by failing to recognize the importance of the strength of Trader Joe's mark when it looked at both similarity and relatedness. Third, the court put undue weight on the fact that Trader Joe's United is a union. And fourth, the court erred by focusing exclusively on the point of sale and not acknowledging the real likelihood of post-sale confusion. On the post-sale confusion point, there's two cases from this court that are particularly relevant. One is the Victoria's Secret case that we said in our brief, and the other one is the Academy of Motion Pictures case. In both of those cases, it was clear that point of sale confusion was unlikely, the hot pink tank top was only sold in Victoria's Secret stores, and the Star Award, anyone who was purchasing it for their employees would know that they were not purchasing an Oscar. So the court below seemed to be interested in this intersection between an ongoing labor dispute and the alleged trademark infringement, and it relied on district court cases from out of circuit, I think both to address the injunction portion of this but also trademark infringement. I guess my first question is, if there's an ongoing labor dispute, does that preclude trademark infringement actions themselves? It does not. There's no labor union exception to the Lanham Act, and if you look at the union cases that the district court relied on, they really are different in kind in two important ways. In the vast majority of them, what was being challenged was the use of the employer's mark, either to talk about the employer or to name the union. In the other cases, these were instances where the mark was being used to criticize the employer, to disparage the employer. They were used in parity situations, and they were used really in the context of union organizing. Those same cases, when they talked about this distinct concept, which is the sale of goods and commerce, made clear that that would be a very different case. The Senko case, footnote two, says that clearly, and several other courts go down that same line. I think when you're looking at the Lanham Act, and you're right that the district court looked at it for both the Norris LaGuardia Act and for the Lanham Act, but focusing first on the Lanham Act, the way that the district court used the union context was through looking at the website itself, but I think the problem with doing that is multifold. One is, we're on a motion to dismiss, and the court made inferences against us at this stage by looking at how a consumer might navigate the Trader Joe's United website. I think the second problem is that it bled into several different sleek craft factors where the analysis doesn't apply. I think the third point is the post-sale confusion one I started with, which is, if you see someone walking down the street—Trader Joe's tote bags are very popular, they're very well known— and if you see someone walking down the street carrying a Trader Joe's United tote bag, there are a number of different designs. If you look at the excerpts of record, page 207, for example, there's a pride design, and if you saw someone walking down the street carrying that tote bag, I think there's a very real risk that someone might think, oh, this is Trader Joe's new tote bag design, I'd like to get one of those for myself. Can I just jump in on that? Yes, absolutely. In your briefs, you made a big distinction, which may be okay, between core union activities and the sale of consumer goods, but as you just sort of highlighted, unions often sell things in the middle of the labor dispute to fundraise and get their message out and do some branding. I'm not sure where that line is and how you would fix that line. What if the union just wanted to sell things to generate money for the labor dispute? I don't think the Lanham Act allows that, and maybe two key points on that. If you look at all of the union cases, and there's a lot of them cited in the brief, these aren't instances where the unions are going out and selling merch in commerce. Instead, they're instances of flyers and handbills and Dodgers and other things that are really core union activity. I think once you go from that setting and move over to the actual sale of goods in commerce, it changes the analysis, because then you're really in the heartland of the Lanham Act. As the Jack Daniels case recently said, you're using the mark as a mark. I guess the second point I would make, and maybe a distinction just to get that out there, is the designs that are being challenged here are not all of the designs that the union sells on their website. There's merchandise being sold that we did not challenge. It's at page 210 of the excerpts of record, and there are others. The focus instead of this complaint, and it was really intentionally narrow, was on instances where they were using our mark in a way that was likely to confuse. There are other things you can do to raise money for the union, but you simply can't say – there are plenty of great charities out there, and you can't, in the name of getting money or soliciting money for your charity, start selling Taylor Swift T-shirts out there. That might generate a lot of money. That might be a great thing, but you just can't infringe on the trademark as a way to make money for a charity and as a way to make money for the union. You were anticipating my question. If the union had used Trader Joe's Union for its merchandise but not adopted the red lettering or the circle or other things that seem more potentially associated with the Trader Joe's marks, would that be a different story then? I don't think it would be because we have a word mark as well. The word mark actually is really critical and central. The fact that it did adopt other things, like the red coloring and a similar font, I think only enhances the similarity. But if you look to go back to the Victoria's Secret case again, and maybe also the Palm Wonderful case, those are two instances where the real similarity was the use of the word mark. One was the word delicious. The other one was the word palm. But everything else, really, about the two goods looked quite different. So the picture in Palm Wonderful, and it shows the two images side by side, it's at page 1128 of the decision. The word palm is the same, but everything else is different. The coloring is different. The lettering is different. So you would agree then if the union had said Trader Joe's in different font, different color, they could do that. They could put it on a tote bag, right? No, sorry. I'm saying the opposite. They couldn't do that either because we have a word mark, Trader Joe's. I'm sorry. They can't use the words Trader Joe's? They can certainly use it to identify themselves as a union. They can use it to talk about their employer. They can use it in union organizing activity, the flyers, examples, and the like. What they can't do is take our word mark and put it on a good and sell it in commerce. Here it's easier because there's a lot of additional things beyond the word mark. But the word mark really is key, and that's what Victoria's Secret and Palm Wonderful show. I mean in Victoria's Secret is the word mark. Isn't it pushing it? Let's say they have a – they create a t-shirt that says Trader Joe's. I don't know. It sucks. Sorry. Apologies. But it's a parody, and they're selling it, and it's to identify the employer and their organizational activities related to that. You're saying the use of that mark in that context because they're selling the shirt would still run afoul of the Lanham Act at that point? I think there's two things going on there. One is when you're thinking about likelihood of confusion, yes. When you're doing it in the context of a parody and it's really clear that it's not coming from the supporter and it's equally clear – sorry, it's not coming from the employer and it's equally clear that the trademark holder is not going to support it, then that definitely plays into the likelihood of confusion analysis. That's what the Jack Daniels decision recognized. But we also have a trademark dilution claim, and I don't want to lose sight of that in focusing on likelihood of confusion because trademark dilution does not require a likelihood of confusion. It focuses on the similarity, and the concern there is with eroding the mark. Our claim here is trademark dilution by blurring, but there's also trademark dilution by tarnishment. Instances like that that might tarnish the mark are viable claims when you have a famous mark like Trader Joe's. I don't want to forget that separate claim here. So why was nominative fair use not the appropriate way to analyze the dilution claim in your view? So a couple of reasons. One, it wasn't raised, but maybe more substantively, nominative fair use for the trademark dilution claim is a statutory exclusion. It's at section 1125C3A. And what it says is nominative fair use doesn't apply when you're using it as a designation of source. And so when you are designating the source of your own goods, whether it's the T-shirt, tote bag, mug here, it is just not an issue of nominative fair use. And again, that's something the Supreme Court got at in the Jack Daniels case in saying that's not what it is focused on in trademark dilution. It's statutory, but this court also has cases that say nominative fair use is more of the situation where you're actually talking about the trademark holder's product. So you're in comparative advertising. You're doing a parody kind of situation, and that's just not this case. No, I mean, you asked that question I was going to ask. So free button for a rally. I love Trader Joe's Union. OK. So the free buttons are different, but they're different because of the e-commerce requirements. So the Lanham Act has a separate requirement that it has to be e-commerce. But if that button is sold in support of union activities. So remind me what the buttons. I love Trader Joe's Union. Yeah, so that is, I think, still a problem because it could suggest that Trader Joe's is supporting or affiliating with that message, and that's the key to trademark. It's having control over your message. Trader Joe's spent 50-plus years developing this very strong mark and exercising control over it. It doesn't license it to anybody, and it routinely polices and enforces the mark because trademark law basically requires it because you erode and you dilute the strength of the mark if you let others use it in the marketplace. I'm sorry. I'm not sure I understood your answer to Judge Thomas's question, but you're saying that the union cannot have the words Trader Joe's on anything, whether it's free or sold? No, sorry. I'm saying that the free situation, I think, is different, but not because of likelihood of confusion. It's different because there's an e-commerce requirement for the Lanham Act. So the free merch is something different. What we're focused on is when you're actually selling it in commerce and you're using the Trader Joe's mark. But the North LaGuardia Act, and I guess there's a dispute over whether this is related to an ongoing labor dispute. And the district court took judicial notice of certain facts about the sequence of events. Does that matter if – I mean, I take your point, which is selling merchandise with marks is not actually related to an ongoing labor dispute, regardless of the timing of when it's taking place or not. Does the sequence that the district court found make any difference if we agreed with that view? If you agreed with me that this case does not grow out of or involve a labor dispute, then I don't think the sequence or the timing matters. But I do want to address the timing of it because I think it's important. The district court said that this was filed six days after a particular NLRB complaint. But if you actually look at the timeline – and I realize I am intruding on my rebuttal time, but if I could just spend a minute on this – the timeline is that Trader Joe's United existed for more than a year before this lawsuit was brought. We had no objection to them using the mark as part of their name, no objection when they launched the website, no objection when they engaged in organizing activities. They filed nine separate NLRB charges in the year leading up to this. What prompted this lawsuit was when on June 23rd, 2023, they decided to launch a merch store on their website. And what did we do? Four days later, we sent a letter to them saying, please stop selling merch on your website that has our mark on it. When they declined to do so, we sent another letter on July 5th saying the same thing. It was only after that that the NLRB complaint was filed. And so this lawsuit very much was prompted by the launch of the merch store, similar to how we enforce our trademark in a variety of other contexts. Is it your view that the sale of merchandise can never be involved in an ongoing labor dispute? I guess to take an earlier example, suppose the union is actively involved in a labor dispute and they've filed complaints with the NLRB and they're using the merchandise as a means to raise money in order to help promote and support those efforts. Why couldn't we say that that's a part of an ongoing labor dispute? I think there's other fact patterns that could be closer if the merch itself actually publicized a labor dispute. And this maybe gets a little bit into Section 104E. But 104E of the NLGA talks about publicizing a labor dispute. This merch doesn't do that. It publicizes the labor union. What if it said Trader Joe's is anti-worker? I mean that's clearly—while NLRB charges are pending and there's obviously a labor— what if they sold that bag and just said it's unfair to workers? And they were fundraising. They needed money for legal defense or pay unemployed workers, whatever. So I think that's a much closer case under the NLGA. But that's just not what the merchandise that's challenged here actually does. If you look at the designs in the complaint, it doesn't publicize a labor dispute in any way. Three of them are just literally say Trader Joe's United and have no other information on there at all. It has the fist and the box cutter. Right. So it has the fist. The box cutter I'm not sure has any well-recognized meaning. But the fist itself, I mean the fist is a sign of solidarity. But it's not identical to saying it's a union. And in fact, somewhat coincidentally on my flight over here, I was looking at CNN and President Trump had just left his congressional address and his hand was up in the air in a fist. So it shows solidarity, but it doesn't necessarily relate it to the union. And most importantly, it doesn't identify that there's a labor dispute. There's plenty of labor unions out there. Just because a union exists does not mean a labor dispute exists. And it doesn't publicize anything specific about that dispute. Any other questions? Great. We'll give you a little time for rebuttal. Thank you. May it please the court, my name is Sonia Mehta and I represent the union Trader Joe's United. The district court properly held that Trader Joe's weaponized the legal system through this exceptionally meritless complaint to chill Trader Joe's United federal right to organize unions, which workers have done despite Trader Joe's unceasing labor practices. Even under de novo review, Trader Joe's allegations are not plausible because the logos at issue here are fundamentally dissimilar, both visually and in meaning. And you must take the logos as a whole. You cannot engage in dissection under trademark rules. As the district court ruled, no reasonable consumer would believe that the Trader Joe's United campaign items were products from the grocery corporation. So, counsel, it's a little bit unusual to see this resolved at a motion to dismiss stage, at least on the likelihood of confusion side of things. Because you do have, and I did see the side by side with the tote bags, the red lettering that's very similar to the Trader Joe's red lettering, and the circles, and you have reusable tote bags. Why isn't that at least a triable question? As a matter of law, there's no likelihood of confusion, especially with a strong mark. Didn't the district court jump the gun a little bit there? No, absolutely not, because these logos are so dissimilar. The raised fist is, even in case law, it is a symbol of labor solidarity, and it's a symbol of political justice, Black Lives Matter. It's a symbol of racial, economic, social justice. But what if Trader Joe's wanted to endorse Black Lives Matter and other types of protests? In other words, it seems as if the union is using this mark as a source identifier, and so that's where the confusion could be. Maybe Trader Joe's, it might be confused that Trader Joe's is endorsing other protests, even if you're right that this is a sign of protest. And so at least, wouldn't that have needed some more fact-finding before being resolved in a motion to dismiss? No, because no reasonable consumer would confuse the raised fist with their cheese board, wine, and grapes. I'd like to just jump in. The reasonable consumer test under our well-established case law is a question of fact. What a reasonable consumer would or would not do in response to advertising is decided to have been a question of fact. Usually not, as Judge Sanchez said, decided on the papers. That's correct, Your Honor, usually not. But in these kinds of cases where it's exceptionally meritless and taking both logos together in their entirety, there's no way that it's not plausible to allege anyone would confuse the raised fist with the cheese and grapes and wine. And then we go on to look at the name because you have to look at it all together. Trader Joe's United. United means the union. It's inherently critical of the employer. It is an adversarial relationship. You take it all together, the raised fist, Trader Joe's United, that is the union, and it's just not plausible to say anyone would confuse that, and that's exactly what Judge Vera saw. I'm also a little concerned about the fact that to get to that punchline, mindful that this was a Rule 12b-6 motion, the judge seems to have looked at a lot of stuff outside of the complaint, other label disputes. I'm having trouble understanding how all that extra outside information would be appropriate in the 12b-6 context. Well, I believe it's the Knievel case where the court is permitted to look into sources cited in the complaint. So Trader Joe's, they do cite the website throughout, and what they did was something. They artfully pleaded to only refer to the store, but that doesn't disallow the judge from looking at the whole website. But didn't the judge not only look at the website but say this is what I think a consumer is likely to do or likely to think or click on? It just, to Judge Donato's point, it seems as if the court was drawing its own inferences, and that seems a little bit beyond the dismissal stage. In the VIP versus Jack Daniels case, the court acknowledges that where the allegations are so implausible, the court can certainly dismiss on a 12b-6. And that's what this is. That's what this is. This was two years of struggle by Trader Joe's United. We are winning, we are winning sites, and when Trader Joe's saw an opportunity to weaken us, to go after the union, to weaponize the federal courts against us, it did so because it's absurd. The raised fist and the cheese and crepes have nothing in common, and nobody would confuse them. Let me ask about the Norris LaGuardia Act. How much of an active dispute do you need, in your view, before that act comes into play? How much of the context of this dispute do we have to look at? Well, this dispute, and in our briefing we talked about all the unfair labor practices that Trader Joe's has been found guilty of. We talked about how they have fired unionizing leaders, unionizing workers. We've talked about how they took away the benefits of stores that did unionize but allowed those who didn't to keep those benefits. I mean I think that this is overwhelming, and I believe the judge said it was undoubtedly a labor dispute here. Well, I think I grant you that there is an ongoing labor dispute over those practices. What's the connection to selling merchandise to that labor dispute? Or is it your view that any time there's a labor dispute, the union can just sell whatever it wants and infringe on trademarks? It's my view that there was no infringement here because, again, we're talking about a raised fist. No, I know, but I'm trying to understand the Norris LaGuardia Act application. And so at a threshold level, just because there's an ongoing labor dispute doesn't necessarily mean that the union can sell merchandise. Why is this a different situation in your mind that makes this part of an ongoing labor dispute or arising out of an ongoing labor dispute? Well, I think what I'm understanding is if we're putting aside the total dissimilarity here. Yes. Let's assume you're infringing. Right. Assume that they're very similar and that everybody is confused when they see the raised fist back. Assuming that we took – assuming that the logos were similar, could a union sell merchandise? No. Could – so the Norris LaGuardia Act prevents a court from entering an injunction to stop union activity. The question here is can that union activity encompass selling merchandise that infringes on the company's mark? And can – does the Norris LaGuardia Act apply in that circumstance? So the Norris LaGuardia Act is going to be a separate analysis than the Infringement Act. And I understand that that's true, that unlike the district court did, it needs to do both analyses. So that's true, yes. But the court said – but I guess just to be more specific, the court said that one can – that he has precluded – the district court has precluded from entering an injunction under the Norris LaGuardia Act. So my question is why is that so if it's about selling merchandise on the union's website? So my understanding is that the Norris LaGuardia Act inquiry is was there a labor dispute? Is this arising out of a labor dispute? And we talked about the vast evidence that shows this truly comes from a labor dispute. So that's set aside. No, there's no injunction because it came out of a labor dispute. And then the court does have to move on and look at the Lanham Act where it found total – But why? Because it would seem – I mean it would seem under the district court's reasoning that if it's arising out of a labor dispute, if the labor dispute is the crux of the controversy, then the court can't enter an injunction full stop. I mean I think that that's the district court – where the district court was going. It sounds like you don't agree with that. It sounds like in your view you have to go on and still – I don't know what actual work the Norris LaGuardia Act would be doing in your view. I think I do agree with you that – and I forgot to reserve a couple minutes, two minutes – that the Norris LaGuardia Act, if it arises out of a labor dispute, then the district court cannot enjoin the activity. But the district court must go on to apply the Lanham Act. Okay, all right. And talk about the dilution claim. I'm having a hard time seeing how nominative fair use enters into the picture here. So can you explain to me why that was appropriate to do? And I take it the parties never briefed this issue, so maybe you don't want to defend it. But what – did the district court get this part wrong? The nominative – so first of all, blurring has to consider similarity. And we've discussed how completely dissimilar these logos are. Nominative fair use does come into play here because Trader Joe's United is using the name Trader Joe's to identify the employer, to identify the labor dispute. And we can do that. We can certainly use it because inherent in the raised fist and the name Trader Joe's United is criticism of the employer. And we have to identify the employer. KSAW allows the union to use the name of the employer. Trader Joe's does not even dispute that we can use the name of the employer. They're saying, well, you can only – you can't use it if you're selling something. But they're not – they're not recognizing the district court's obvious conclusion in my view that the logos were so dissimilar that there's no infringement. But would you agree that the cases that the court cited that were out of circuit, those – some of those cases are making a distinction between using a name for organizing activity and selling things. So I mean if we were to agree with you, it seems like we would be the first court to do that, wouldn't we? But we're not using the logo. You're not – so I guess here's my question. Why isn't Trader Joe's union using the marks for – as a source identifier saying we are the union itself and we're using these tote bags, which is what Jack Daniels said was the central concern of the Lanham Act for infringement? So – and in the Jack Daniels case, the dog toy company conceded that it was using the mark as a mark, right? It was using Jack Daniels' mark as a mark. We don't concede that. We're not using Trader Joe's to mark our products to somehow refer to this tote bag came from Trader Joe's. I mean we have a raised fist and we have the word united, and we cannot ignore the totality of that. Saying Trader Joe's united – you know, they cited this case, Davis v. Blue Wave, right, where it's a book and a movie. Gringo and Gringo is the title of the book and the movie. Now imagine if it was first of all a book and a union, right? And the book was called Gringo and the union was called Gringo's United. The word united changes everything, right? And you put that together with the fist, and there's no escaping that. Trader Joe's United means a political movement, means a social or labor justice movement, and means a union. And so therefore, these things are so dissimilar that they're worlds apart. And then when you pair that with the history of unfair labor practices and worker retaliation, we can see exactly what this is. You have a few minutes left if you want to cover anything else. I will reserve my time. Thank you so much. You don't have a cross appeal, do you? Then there's no reserving of time. It's now or never. So I will point out as well that the other sleek craft factors go in our favor, right? You cannot buy our tote bag, which is campaign-related merchandise, which is for the union, which is to convey the struggle of the union. You can't buy it in a store. You can only buy it online. I think the judge was absolutely right when he looked to the website and said, wait a minute. When you look even at that Just the Store website, it says Trader Joe's United. Again, united. We can't lose sight of the word. The district court saw the labor context, and this appellate court can too. So when you see Trader Joe's United.org, any reasonable consumer would understand that that is referring to a union, some social justice movement. And again, on that store website, you again have the raised fist. And let me talk about the box cutter for a moment. The box cutter is what the Trader Joe's workers use to cut boxes. It's the labor symbolism there. There's no one who could ever. Oh, and you brought up the pride issue. So let's go back and let's address some of these things. So in a way, saying Trader Joe's sucks and Trader Joe's United is the same thing. Not that we want a peaceful relationship with the company, but we are inherently critical of it because we're the union. And it doesn't have to be that way, but it is under the law. I want to talk about the total de minimis impact of these products. As far as leave to amend, this is so far off. There was no product that they showed that came anywhere close to similarity. The cases that they reference go to direct competitors. We're obviously not. We are the union. And I'll end there. Thank you. And we'll give you a couple of minutes. Thank you. I appreciate it. A few quick points. First, United does not equal the word union. United means a lot of different things. There are soccer teams named United. There are charities named United. There are political organizations named United. They're not one and the same. And United certainly doesn't equal sucks to any reasonable observer. The second point is this is not about cheese and grapes. It's not about the logo. The district court made the same mistake and essentially looked at this as if it did not say Trader Joe's on it, as if literally the only word on there was United and the color and the font. And that's not correct either. The reality is there are a variety of different tote bag designs. We cite some of them are included in the complaint just as examples are at page 203. There are more than 50 different tote bag designs that are in circulation at any given time. The idea that it's not even plausible to think that someone might be confused about these two bags does not survive the 12v6 inquiry and standard. On judicial notice and incorporation by reference, the COJA decision is very clear that you cannot make inferences against the plaintiff based on things outside the record. That's exactly what the district court did here on the NLGA. I think the key point is it's really premature, honestly, to even engage in this inquiry. It's a 12v6. We didn't seek a preliminary injunction. If you look at the NLGA cases, all of them, I believe except one, came up in the context of a PI or even a permanent injunction. And so that is something that doesn't have to be decided today and really shouldn't be on this record. And yes, there are ongoing labor disputes, but I think you picked up on the key point, which is the question of whether this grows out of or involves it. And the sale of merchandise that says nothing about a labor dispute does not do that. Finally and importantly, this is a 12v6. It is exceedingly rare to grant a 12v6 motion when it's likely to confusion because it's so fact-intensive. It is rare still to do so without even giving one opportunity to amend. And so we think this complaint survives on its own. Can I ask just a follow-up on the NLGA claim? Well, on the NLGA issue, I take your point that you haven't filed a motion for a preliminary injunction, and perhaps the panel shouldn't speak about it, but the court did say that it would be enjoined. I mean, could that have a future effect on you, or is it better for us to just stay away from that issue altogether? I mean, I would love for the court to explain that the district court's reasoning was incorrect on the NLGA, or at least it hinted that, so we don't just end up with the same decision later on when we get to the question of whether an injunction is warranted. And I think on that, maybe the court could just make two key points. One is the fact that there's an ongoing labor dispute doesn't mean that this case arises out of or involves a labor dispute. But secondly, and I think this is important because it's easy to miss, the inquiry under the NLGA is not just that threshold question, but really the only things that are prohibited, like categorically prohibited, are the enumerated acts that are in 104, and the only one anyone talks about is 104E, which is just about publicizing a labor dispute, and this is not that. This is another reason why I do think it's premature, because there are other sections that apply, that govern when injunctions can be issued, but they're all things that happen later on in the case. Thank you. Thank you. Thank you, counsel, for your arguments. They were very helpful to us. The matter will stand submitted and court is adjourned. All rise.
judges: SANCHEZ, THOMAS, Donato